McFarland, J.,
delivered the opinion of the Court—
Justices Turney and Sneed dissenting..
Mary Robertson, as administratrix of the estate of her husband, C. N. Robertson, brought this action for the use of herself and children, under the provisions of the statute, charging that the death of her husband *277 was caused by the wrongful acts and omissions of the -defendant. Verdict and judgment were rendered in her favor for $15,000; from which the defendant has •appealed in error.
The defendant was lessee of the Memphis & Ohio Eailroad, and was at the time operating the road running into the city of Memphis. About 10 o’clock the morning of the accident, a freight train arrived by the road, and in accordance with the custom, took a side track, there being at the place three parallel tracks. The freight train of cars was deposited on the north track, the engine and tender cut loose, run across into the middle or main track, and then backed out, tender foremost. This was the daily custom. The deceased, Eobertson, was an employe of the company, as watchman. Among other things, it was his duty to examine the freight cars upon their arrival, see their eon--dition, take down their number, etc., and make his report to another officer. Upon the arrival of this train, he at once set about this duty. He was walking along by the side of the train of ears, with his book and pencil in his hands, looking up at the cars and apparently taking down their numbers. His side, -and at times his back, was turned in the direction of the engine and tender, then backing towards him. Part of the time he was on the main or middle track, upon which the engine was backing. The engine and. tender' under the control of Jones, engineer, continued to back along the track at the rate of three or four miles per hour, ringing the bell constantly. No one was on the rear of the tender, then in front, but both *278 the engineer and fireman were at their usual place in the engine. Robertson was observed by the engineer Jones, at a considerable distance,' and was seen by him until he was hidden from view by the wood upon the tender, when the engine or tender was within about one hundred and twenty-five feet of him. No effort was made to stop the engine. Jones knew Robertson and his employment, and supposed he would step off at the proper time. His danger was first discovered by Donahue, an engineer upon another engine, coming from the other direction: he hallowed and blew his whistle. Jones stopped his engine, but too late, Robertson was run over and killed. Jones could have stopped his engine, going at the rate then running, within forty feet. Robertson could probably have stepped off the track safely after the engine came-within some twenty or thirty feet of him. He remained on the track too long. The proof makes, it probable, that in attemping to step from the track, he slipped and fell, owing to its wet and slippery condition. Why he did not leave the track sooner does not appear. This is a general statement of the occurrence, sufficient for our purpose.
Many' questions have been made and argued for a reversal.
1st. It is argued, that there can be no recovery, for the reason that one employe cannot recover for the acts or negligence of his fellow servant or employee, engaged in a common employment. Various, authorities have been referred to. We do not deem it proper to review these authorities, or to discuss the- *279 question, for the reason that it has been folly considered by this Court, in a very recent case — the case of the N. & C. R. R. Co. and The M. & C. R. R. Co. v. J. M. Carroll, Adm’r. In that case the general principle as above stated, is upon the authorities in this. State admitted — but a distinction is taken as to what constitutes a fellow servant or employe in such cases..
In that case, Judge Freeman delivering the opinion of the Court, laid down the distinction as follows: “The rule, we hold, can not be held to apply as between an employe in one department of the work of a railroad company, separate, distinct and apart from, the work of the other employe, by whom he is injured, which he has no immediate or necessary connection with.” We deem it unnecessary to do more than to approve the doctrine of that case, and refer to it, as containing the principles fully governing this. We hold that the plaintiff’s action on this ground is. not defeated.
The next question, and one of importance, is this.. The Circuit Judge instructed the jury, that if the deceased was killed by an engine, under the control of another employe of the defendant, being run over him, then the defendant was liable, unless it showed that the precautions laid down in the Code, Secs. 1166, 1167, 1168, were strictly observed, and this would be so, although it might appear that the accident would have happened although the precautions had been observed.
This involves a construction of the Sections of the-Code referred to. The sections are as follow's: 1166. *280 '“In order to prevent accidents upon Railroads, the following precautions shall be observed: 1st. Railroad •companies shall employ white men only, as engineers •ou their roads. Sub-sec. 2 provides, that overseers of •common roads shall . make the crossings in a certain manner. 3d. On approaching every crossing so distinguished, the whistle or bell of the locomotive shall be .sounded at the distance of one-fourth of a mile of the crossing, and at short intervals until the train has passed the crossing. 4th. On approaching a city or town, the bell or whistle shall be sounded when the train is at the distance of one mile, and at short intervals until it has reached the depot or station. On leaving a town or city, the bell or whistle shall be sounded when the train starts, and at intervals until it has left the corporate limits. 5th. Every railroad shall keep the engineer, fireman, or some other person upon the locomotive always on the lookout ahead, and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.”
It is this last sub-section that is supposed to apply more directly to this case. Subsequent sections provide that the burthen shall be upon the road to prove that these precautions have been observed, and upon their failure to do so, they shall be liable in damages.
This statute in terms makes no exceptions, but it seems to us unreasonable and utterly impracticable to apply it strictly to the running of engines and cars about the depots or yards of railroads, and in relation *281 to the bands or employes of the road, who are moving across the track in the discharge of their several duties. To require that whenever any one of these employes shall be upon the track, when the engine is running at the rate of three or four miles an hour, that the whistle shall be sounded, the brakes put down, and every effort used to stop, seems to us not only to be utterly unnecessary, but also, that it would render it almost impracticable, to make the necessary movements of the engines and cars about the yard. This record discloses, that engines passed over these tracks a great number of times daily — and this we all know from common observation. The duties of the employes require them to cross or walk upon the track often, and sometimes close to a moving engine. They become familiar with this, and possibly to some extent indifferent to their danger. They seem conscious of their ability to cross the track close to a moving engine without danger. They are familiar with the running of the trains, and with the rules and regulations. In this case, it appears that the deceased had been for some time in the employ of the company, and engaged in the very duty he was that day discharging. It was the daily custom for the engine and tender to back out, in the same' manner it did that day. The ringing of the bell was the signal used in the yard, that the engine was in motion — all this was well known to the deceased.
Upon this state of facts we think it was error to make the liability of the company dependent upon their proving that they had strictly complied with‘.these *282 provisions of the statute above quoted. We think the-statute was not intended to apply to a case of this sort; but as between its own employes; and about the depot, where trains are being .made up and engines and cars switched from one track to another— in regard to-the hands engaged in these several duties. —we think different rules may be adopted. We do-not mean to lessen in any degree the rigor of the statute, as applied to the general public — or in any case where it was intended to apply — nor do we intend to intimate that, in a .case like the present, the company may not be held liable for injuries resulting from the misconduct or negligence of its agents. But we think that that liability is not to be determined by- the statute referred to, but by the general common law principles applicable in such cases.
While we are of this opinion, we are, nevertheless,.’ also of the opinion, that a reckless, wanton or careless disregard of human life cannot be tolerated, and that a failure to use all proper care and prudence, wilt render the company liable for all injuries resulting therefrom.
The doctrine of contributory negligence has been discussed, and is a very proper question to be submitted to the jury. This question was settled in the case before referred to, of the N. & C. R. R. and M. & C. R. R. v. J. M. Carroll — not yet reported. The rule is also clearly settled in the case of Whirley v. Whiteman and others, 1 Head, 610.
We will not attempt to add to the discussion contained in these two oases, and refer to them as a *283 guide in another trial. We intimate no opinion on-the merits of the case. For the error in the application of the Statute, the judgment is reversed.